2023 ME 34

OPINION OF THE JUSTICES
OF THE SUPREME JUDICIAL COURT

GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION

Docket No. OJ-23-1

_____

QUESTIONS PROPOUNDED BY THE MAINE SENATE
AND THE MAINE HOUSE OF REPRESENTATIVES

IN A COMMUNICATION

DATED MAY 11, 2023

ANSWERED JUNE 9, 2023

_____

QUESTIONS PROPOUNDED BY THE MAINE SENATE
AND THE MAINE HOUSE OF REPRESENTATIVES
IN A COMMUNICATION DATED MAY 11, 2023

**STATE OF MAINE**

_____

**In Senate 5/4/2023**

**WHEREAS,** the Constitution of Maine, Article VI, Section 3 provides for the Justices of the Supreme Judicial Court to render their opinion on important questions of law and upon solemn occasions; and

**WHEREAS,** it appears to the 131st Legislature that the following are important questions of law and that this is a solemn occasion; and

**WHEREAS,** the Constitution of Maine, Article IV, Part Third, Section 18 provides the ability of electors to initiate and propose to the Legislature any bill, resolve or resolution and further provides the procedures to be followed by the initiators, including filing the petition for a direct initiative of legislation, addressed to the Legislature, with the Secretary of State within a specified number of days after the convening of a regular session; and

**WHEREAS,** the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2 provides that the Legislature must be given the opportunity to act on the measure: "The measure thus proposed, _unless enacted without change by the Legislature at the session at which it is presented_, shall be submitted to the electors together with any . . . recommendation of the Legislature" [emphasis added]; and further that "[i]f the measure initiated _is enacted by the Legislature without change_, it shall not go to a referendum vote" [emphasis added]; and

**WHEREAS,** the Constitution of Maine, Article IV, Part Third, Sections 1 and 4 grant the Legislature the exclusive authority to set its own rules of procedure, including such rules establishing the manner in which initiated bills may be presented to the Legislature for consideration; and

2

**WHEREAS,** between the convening of the 131st Legislature and March 22, 2023, the Secretary of State certified as valid 4 measures proposed by electors; and

**WHEREAS,** on February 16, 2023, the Secretary of State transmitted 2 of the measures to the Legislature to be produced by the Office of the Revisor of Statutes as legislative documents for consideration by the Legislature; and

**WHEREAS,** on March 22, 2023, the Secretary of State transmitted the other 2 measures to the Legislature to be produced by the Office of the Revisor of Statutes as legislative documents for consideration by the Legislature; and

**WHEREAS,** before any measure thus transmitted was produced as a legislative document and presented to the Legislature, the First Regular Session of the 131st Legislature adjourned on March 30, 2023; and

**WHEREAS,** prior to its adjournment, the First Regular Session of the 131st Legislature passed a joint order carrying over to a subsequent session of the 131st Legislature ". . . all matters not finally disposed of at the time of adjournment . . . in the possession of the Legislature, including working papers and drafts in the possession of nonpartisan staff offices"; and

**WHEREAS,** among the working papers and drafts in the possession of the nonpartisan staff office the Office of the Revisor of Statutes at the time of adjournment were the 4 measures not yet prepared as legislative documents; and

**WHEREAS,** the 131st Legislature convened in special session on April 5, 2023; and

**WHEREAS,** on April 10, 2023, 2 of the measures, as prepared by the Office of the Revisor of Statutes, were transmitted to the Clerk of the House, given Legislative Document numbers, L.D. 1610 and L.D. 1611, and ordered printed by the Clerk of the House with the following statement "Transmitted to the Clerk of the 131st Maine Legislature by the Secretary of State on April 10, 2023 and ordered printed."; and

**WHEREAS,** these 2 measures were placed on the Advance Journal and Calendar of the House of Representatives and presented to the Legislature on April 11, 2023; and

**WHEREAS,** those 2 measures had not previously been printed and presented to the Legislature in either the First Regular Session or the First Special Session of the 131st Legislature; and

**WHEREAS,** Rule 401 of the Joint Rules of the 131st Legislature provides that a bill or resolve is not considered to be "in the possession of the Legislature" until "after it is printed"; and

**WHEREAS,** on April 11, 2023, the Secretary of State issued 4 proclamations of the Governor proclaiming that an election be held for all 4 measures, calling into question the ability of the Legislature to thereafter consider these measures as provided by the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2; and

**WHEREAS,** there are now questions before the Legislature regarding the constitutionality of those proclamations and the efficacy of any actions the Legislature may take to enact the measures; and

**WHEREAS,** as it considers action on the initiated bills, it is important that the Legislature be informed as to the legal questions raised in this order; now, therefore, be it

**ORDERED,** the House concurring, that, in accordance with the provisions of the Constitution of Maine, the Senate and the House of Representatives respectfully request the Justices of the Supreme Judicial Court to give their opinion to the Senate and the House of Representatives on the following questions of law:

Question 1. Is the mere transmittal of a measure by the Secretary of State sufficient to constitute "present[ation] to the Legislature" within the meaning of the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2, notwithstanding that at the time it was transmitted the measure did not exist as a legislative document, had not been printed pursuant to Joint Rule 401, had not appeared on any legislative calendar, and that neither the full House nor full

4

Senate were made aware that the measure was in possession of the Legislature until approximately 53 days after transmittal?

Question 2. If the answer to Question 1 is in the affirmative, did the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2 preclude the 131st Legislature, as assembled in the First Regular Session, from carrying the measure over for consideration in the First Special Session?

Question 3. If the answer to Question 2 is in the negative, does the Legislature's Constitutional power enumerated in Article IV, Part Third, Section 1 to "make and establish all reasonable laws and regulations for the defense and benefit of the people of this State" include the power to consider and enact the measure into law during the First Special Session?

Question 4. If the answer to Question 3 is in the affirmative and a measure is thus enacted by the First Special Session of the Legislature without change, must the identical measure identified in a Proclamation executed by the Governor on April 7, 2023 "not go to a referendum vote" pursuant to the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2?

Question 5. If the answer to Question 4 is in the negative, is a bill thus enacted by the First Special Session of the Legislature a competing measure to an identical measure placed on the ballot by proclamation of the Governor on April 7, 2023, as described in the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2?

SPONSORED BY:      /s/

    **(President JACKSON, T.)**

    **COUNTY:  Aroostook**

OPINION OF THE JUSTICES

To the Honorable Maine Senate and Maine House of Representatives:

[¶1] The questions propounded by the Maine Senate and the Maine House of Representatives relate to four citizen-initiated measures that were transmitted to the Legislature by the Secretary of State on February 16 and March 22, 2023, but were not prepared as legislative documents for the Legislature's consideration until after the First Regular Session of the 131st Legislature adjourned on March 30, 2023.

[¶2] The Senate and House of Representatives propounded these questions to us as individual Justices of the Maine Supreme Judicial Court pursuant to article VI, section 3 of the Maine Constitution, which states, "The Justices of the Supreme Judicial Court shall be obliged to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives." Me. Const. art. VI, § 3; *see Opinion of the Justices*, 2017 ME 100, ¶ 1, 162 A.3d 188.

[¶3] It is our honor to provide the following response. All participating Justices join in this opinion.[1]

---

[1] Justices Connors and Lawrence decline to answer because their disqualification or recusal is required by the Maine Code of Judicial Conduct.

6

## I. BACKGROUND

[¶4]   On February 16, 2023, the Secretary of State transmitted two citizen-initiated measures to the Legislature to be produced by the Office of the Revisor of Statutes as legislative documents for consideration by the 131st Legislature.  The Secretary of State transmitted two more such measures to the Legislature on March 22, 2023.[2]

[¶5]   The 131st Legislature adjourned its First Regular Session on March 30, 2023, before any of the transmitted measures were produced as legislative documents for the Legislature's consideration.   Before its adjournment, the Legislature passed a joint order carrying over to a subsequent session of the 131st Legislature "all matters not finally disposed of at the time of adjournment of the First Regular Session of the 131st Legislature in the possession of the Legislature, including working papers and drafts in the possession of nonpartisan staff offices."  S.P. 594 (131st Legis. 2023).  The four measures at issue here were among the matters not finally disposed of by the time of adjournment.

---

[2]   The Legislature indicates that "the Secretary of State transmitted . . . the measures to the Legislature to be produced by the Office of the Revisor of Statutes as legislative documents for consideration by the Legislature," but does not describe in detail how, or to which legislative officer or officers, the Secretary of State transmitted the measures.

[¶6]  On March 31, 2023, the Governor called the Legislature into special session due to "an extraordinary occasion arising out of the need to resolve many legislative matters pending at the time of the adjournment of the First Regular Session of the 131st Legislature of the State of Maine."  Proclamation of Governor Janet T. Mills Convening the Members of the 131st Legislature in Special Session (Mar. 31, 2023); *see* Me. Const. art. V, pt. 1, § 13 ("The Governor may, on extraordinary occasions, convene the Legislature . . . .").  The 131st Legislature convened its First Special Session on April 5, 2023.  On April 7, 2023, the Governor, concluding that the measures were not "enacted without change by the Legislature at the session at which [they were] presented," Me. Const. art. IV, pt. 3, § 18(2), proclaimed that the measures be referred to the people at the November 2023 election, *see id.* art. IV, pt. 3, § 18(3).

[¶7]  The Office of the Revisor of Statutes prepared two of the initiated measures as legislative documents, which it transmitted to the Clerk of the House on April 10, 2023.  The documents were given legislative document numbers, L.D. 1610 and L.D. 1611, and ordered printed by the Clerk of the House with the following statement: "Transmitted to the Clerk of the 131st Maine Legislature by the Secretary of State on April 10, 2023 and ordered

printed." Both measures were included on the Advance Journal and Calendar of the House of Representatives on April 11, 2023.

[¶8] The Governor's proclamation that an election be held for each of the four measures has called into question whether the Constitution of Maine provides the Legislature with the authority to consider the measures in the First Special Session. *See* Me. Const. art. IV, pt. 3, § 18(2). We invited briefs from the Maine Legislature, Governor Mills, the Secretary of State, the Attorney General, and any other interested party or entity. We received briefs from the Maine Legislature, the Attorney General (joined by the Secretary of State and, in relevant part, by Governor Mills); Protect Maine Elections, Inc.; and Maine Affordable Energy Ballot Question Committee. We conducted an oral argument on the questions on May 31, 2023.

## II. DISCUSSION

### A. Authority to Issue an Advisory Opinion

[¶9] The Maine Constitution places limitations on the authority of the Justices to provide advisory opinions, which represent the advice of the participating individual Justices. *Opinion of the Justices*, 2017 ME 100, ¶ 9, 162 A.3d 188; *see* Me. Const. art. VI, § 3. Such opinions are not binding in future cases and have no conclusive effect. *Opinion of the Justices*, 2017 ME 100, ¶ 9,

162 A.3d 188. They may, however, provide necessary guidance and analysis for decision-making by the other branches of government. *Id.* "The tension between the constitutionally required separation of powers and the constitutionally provided authority of the Justices of the Maine Supreme Judicial Court to provide official but nonbinding advice to the other Branches is addressed through the balance articulated in the requirements (1) setting out who may seek the Justices' advice, (2) inquiring whether that advice is sought as to important questions of law, and (3) providing that a solemn occasion must exist for the Justices' provision of such advice." *Id.* ¶ 17; *see* Me. Const. art. VI, § 3. The Justices must strictly observe these limitations on their authority. *Opinion of the Justices*, 2017 ME 100, ¶ 17, 162 A.3d 188.

[¶10] Here, the Senate and the House of Representatives are authorized to seek the Justices' advice about their own authority and duties. *See* Me. Const. art. VI, § 3; *Opinion of the Justices*, 2017 ME 100, ¶¶ 19, 24, 162 A.3d 188. The questions are not inconsequential, "esoteric, or purely academic" but present important questions of law concerning the Legislature's authority to act. *Opinion of the Justices*, 2017 ME 100, ¶ 20, 162 A.3d 188. Specifically, the Legislature seeks to determine the scope of its authority to legislate by asking whether the citizen-initiated measures were "presented" to it during the First

Regular Session and, if so, whether the Maine Constitution authorizes it to act on those measures in its First Special Session. Me. Const. art. IV, pt. 3, § 18(2). These are the types of "important question[s]" that Justices have answered in the past. *See, e.g.*, *Opinion of the Justices*, 2015 ME 107, ¶¶ 18-27, 123 A.3d 494 (considering whether the Legislature effectively extended a legislative session); *Opinion of the Justices*, 275 A.2d 800, 803-05 (Me. 1971) (considering whether the Maine Constitution authorized the Legislature, upon gubernatorial inaction, to order a special election on citizen-initiated legislation).

[¶11] There must also be a "solemn occasion[]." Me. Const. art. VI, § 3. "[A] solemn occasion is one that arises when questions are of a serious and immediate nature, and the situation presents an unusual exigency." *Opinion of the Justices*, 2017 ME 100, ¶ 22, 162 A.3d 188 (quotation marks omitted). "The question presented must be one of live gravity, that is, one of instant, not past nor future, concern." *Id.* ¶ 23 (quotation marks omitted). The entity asking the question must be seeking advice to guide its own actions relating to matters of public concern that are not tentative, hypothetical, or remote. *Id.* ¶¶ 24-26, 28-29. If a question is overly complex because of intersecting legal and factual variables, the Justices may determine that they cannot answer the question. *Id.* ¶ 27.

[¶12]  Here, the Legislature has a limited time in which to act before the November 2023 election if it is authorized to consider the proposed measures. Thus, we conclude that the Senate and House of Representatives have asked questions about their authority that are of live gravity, are of a "serious and immediate nature," and present "an unusual exigency."  *Id.* ¶¶ 22-23.  They are questions in which the relevant facts are known and we can offer a meaningful opinion.  *Id.* ¶¶ 26-27.  We conclude that the Senate and the House of Representatives have presented important questions of law upon a solemn occasion, and we proceed to answer all questions to which a response is required.

**B.     Consideration of the Questions**

[¶13]  In answering the questions, we are guided by the Maine Constitution, which provides as follows with respect to the direct initiative of legislation:

**Section 18.  Direct initiative of legislation.**

**1.  Petition procedure.**  The electors may propose to the Legislature for its consideration any bill . . . by written petition addressed to the Legislature or to either branch thereof and filed in the office of the Secretary of State by the hour of 5:00 p.m., on or before the 50th day after the date of convening of the Legislature in first regular session or on or before the 25th day after the date of convening of the Legislature in second regular session, except that the written petition may not be filed in the office of the

Secretary of State later than 18 months after the date the petition form was furnished or approved by the Secretary of State. . . .

**2. Referral to electors unless enacted by the Legislature without change; number of signatures necessary on direct initiative petitions; dating signatures on petitions; competing measures.** For any measure thus proposed by electors, the number of signatures shall not be less than 10% of the total vote for Governor cast in the last gubernatorial election preceding the filing of such petition. A signature is not valid if it is dated more than one year prior to the date that the petition was filed in the office of the Secretary of State. The measure thus proposed, unless enacted without change by the Legislature at the session at which it is presented, shall be submitted to the electors together with any amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both. When there are competing bills and neither receives a majority of the votes given for or against both, the one receiving the most votes shall at the next statewide election to be held not less than 60 days after the first vote thereon be submitted by itself if it receives more than 1/3 of the votes given for and against both. If the measure initiated is enacted by the Legislature without change, it shall not go to a referendum vote unless in pursuance of a demand made in accordance with the preceding section. The Legislature may order a special election on any measure that is subject to a vote of the people.

**3. Timing of elections; proclamation by Governor.** The Governor shall, by proclamation, order any measure proposed to the Legislature as herein provided, and not enacted by the Legislature without change, referred to the people at an election to be held in November of the year in which the petition is filed. If the Governor fails to order a measure proposed to the Legislature and not enacted without change to be submitted to the people at such an election by proclamation within 10 days after the recess of the Legislature to which the measure was proposed, the Secretary of State shall, by proclamation, order such measure to be submitted

to the people at an election as requested, and such order shall be sufficient to enable the people to vote.

Me. Const. art. IV, pt. 3, § 18.  In construing the Maine Constitution, we may conduct an examination of "text; purpose; history; common law, statutes, and rules; economic and sociological considerations; and precedent." *Winchester v. State*, 2023 ME 23, ¶ 14, 291 A.3d 707.  The constitutional provisions that govern the direct initiative of legislation "must be liberally construed to facilitate, rather than to handicap, the people's exercise of their sovereign power to legislate." *McGee v. Sec'y of State*, 2006 ME 50, ¶ 25, 896 A.2d 933 (quotation marks omitted).

### 1. Question 1—Presentation of an Initiated Measure to the Legislature

Question 1.  Is the mere transmittal of a measure by the Secretary of State sufficient to constitute "present[ation] to the Legislature" within the meaning of the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2, notwithstanding that at the time it was transmitted the measure did not exist as a legislative document, had not been printed pursuant to Joint Rule 401, had not appeared on any legislative calendar, and that neither the full House nor full Senate were made aware that the measure was in possession of the Legislature until approximately 53 days after transmittal?

[¶14]  The Maine Constitution provides that a proposed citizen-initiated measure, "unless enacted without change by the Legislature *at the session at which it is presented*, shall be submitted to the electors together with any

amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both." Me. Const. art. IV, pt. 3, § 18(2) (emphasis added). Here, the Secretary of State "transmitted" the proposed measures to the Legislature during the First Regular Session, but the Legislature's staff and the Office of the Revisor of Statutes did not print—and the Legislature did not consider—the measures before the adjournment of that session. At issue is whether the measures were "presented" to the Legislature during the First Regular Session. *Id.*

[¶15] The sentence we interpret, read in isolation, does not explicitly resolve the issue because it does not indicate how or by whom a proposed measure is "presented" to the Legislature. *Cf. Jones v. Sec'y of State*, 2020 ME 113, ¶ 11, 238 A.3d 982 ("We will interpret the constitutional or statutory provision according to its plain meaning if the language is unambiguous."); *State v. Hoppe*, 215 N.W.2d 797, 801 (Minn. 1974) ("[T]he language of a constitutional provision, when . . . clear, explicit, unambiguous, and free from obscurity, is the best evidence of the underlying intent." (quotation marks omitted)). Thus, we expand the scope of our inquiry to interpret the provision's meaning. *See Winchester*, 2023 ME 23, ¶ 14, 291 A.3d 707.

[¶16] Because the Maine Constitution itself authorizes the Legislature to enact laws to implement the direct initiative process described in the Constitution, *see* Me. Const. art. IV, pt. 3, § 22; *McGee,* 2006 ME 50, ¶ 20, 896 A.2d 933, the laws adopted by the Legislature, *see* 21-A M.R.S. §§ 901-907 (2023), are helpful in understanding the constitutional process. *See Winchester*, 2023 ME 23, ¶ 14, 291 A.3d 707 (authorizing the consideration of statutes in interpreting the Maine Constitution). Because a statute must be interpreted in a way that "will satisfy constitutional requirements" if the interpretation is reasonable, *Martin v. MacMahan*, 2021 ME 62, ¶ 24, 264 A.3d 1224 (quotation marks omitted), the statutes governing ballot initiatives, which effectuate constitutional requirements and do not conflict with them, are important to our constitutional interpretation. We therefore summarize the direct initiative process laid out by the Maine Constitution and the statutes adopted to implement that process.

[¶17] The electors begin the process by "*propos[ing]*" a bill "to the Legislature for its consideration . . . by written petition addressed to the Legislature or to either branch thereof and filed in the office of the Secretary of State." Me. Const. art. IV, pt. 3, § 18(1) (emphasis added). Though the legislation offered in the petition is proposed to the Legislature, *see id.*, the

Secretary of State decides whether the legislation qualifies to be "submitted" to the Legislature, 21-A M.R.S. § 907, by "determin[ing] the validity of the petition and issu[ing] a written decision stating the reasons for the decision within 30 days from the date of filing," *id.* § 905(1); *see* Me. Const. art. IV, pt. 3, § 18(2) (imposing requirements for a valid petition). If the petition is "determined valid by the Secretary of State pursuant to section 905, subsection 1 and is *submitted* to the Legislature," the pertinent joint standing committee of the Legislature must hold a public hearing unless a public hearing is waived by a two-thirds vote in each house. 21-A M.R.S. § 907 (emphasis added). "The measure thus *proposed*, unless enacted without change by the Legislature at the session at which it is *presented*, shall be submitted to the electors . . . ." Me. Const. art. IV, pt. 3, § 18(2) (emphasis added); *see also id.* art. IV, pt. 3, § 1 (establishing the Legislature's lawmaking authority); *id.* art. IV, pt. 3, § 18(3) ("The Governor shall, by proclamation, order any measure *proposed to the Legislature* as herein provided, and not enacted by the Legislature without change, referred to the people at an election to be held in November of the year in which the petition is filed." (emphasis added)).

[¶18] Under this unified constitutional and statutory scheme, a petition is "submitted" to the Legislature on the date of transmission of the petition to

the Legislature from the Secretary of State.  21-A M.R.S. § 907; *see id.* § 905(1); Me. Const. art. IV, pt. 3, § 18(2).  The transmittal date is also the date of "presentation" because the *electors* present a proposal to the Legislature through filing with the Secretary of State, and the electors' presentation "to the Legislature" becomes complete once the Secretary, after validating the petition, transmits the proposed measure to the Legislature.  Me. Const. art. IV, pt. 3, § 18(1), (2); *see* Me. Const. art. IV, pt. 3, § 1 (authorizing the Legislature to consider, in its second regular session, legislation "*presented* to the Legislature by written petition of the electors under the provisions of Article IV, Part Third, Section 18" (emphasis added)); *Avangrid Networks, Inc. v. Sec'y of State*, 2020 ME 109, ¶ 6, 237 A.3d 882 (stating that the Secretary of State "presented" an initiative to the Legislature in a communication).

[¶19]  The history of the constitutional provision at issue supports this interpretation.  *See Winchester*, 2023 ME 23, ¶ 14, 291 A.3d 707 (authorizing the consideration of constitutional history in interpreting the Maine Constitution).  The constitutional amendment that initially created the direct initiative process in 1907 provided that citizens could submit proposed legislation

> by written petition addressed to the legislature or to either branch thereof and filed in the office of the secretary of state *or presented*

18

> *to either branch of the legislature* at least thirty days before the close of its session. Any measure thus proposed by not less than twelve thousand electors, unless enacted without change by the legislature at the session at which it is presented, shall be submitted to the electors together with any amended form, substitute, or recommendation of the legislature, and in such manner that the people can choose between the competing measures or reject both.

Resolves 1907, ch. 121 (effective Jan. 6, 1909) (emphasis added).

[¶20] The emphasized language remained in place until the adoption of a definitive requirement that every petition must be filed with the Secretary of State. Const. Res. 1975, ch. 2 (effective Nov. 24, 1975). The provision then read as follows: "The electors may propose to the Legislature for its consideration any bill, resolve or resolution, including bills to amend or repeal emergency legislation but not an amendment of the State Constitution, by written petition *addressed to the Legislature or to either branch thereof and filed in the office of the Secretary of State* by the hour of five o'clock, p.m., on the fiftieth day after the date of convening of the Legislature in regular session." *Id.* (emphasis added). Section 18 continued to provide for a measure's submission to the electors "unless enacted without change by the Legislature at the session at which it is presented."[3] *Id.*

---

[3] Subsequent amendments did not affect the language regarding the session at which a measure is "presented." Const. Res. 1981, ch. 1 (effective Nov. 23, 1981); Const. Res. 2005, ch. 2 (effective Nov. 27, 2006).

[¶21] Because section 18(2) initially included multiple means of submitting the petition—by filing it in the office of the Secretary of State "or present[ing it] to either branch of the legislature" within a specified time before the end of the legislative session, Resolves 1907, ch. 121 (effective Jan. 6, 1909)—the reference to the proposed measure being "presented" must have initially referred to the petitioners' presentation of it to the Legislature either directly by the petitioners or through the Secretary of State. The presentation now *must* be through the Secretary of State, and that presentation is complete upon the Secretary of State's transmittal to the Legislature.

[¶22] This interpretation of section 18(2) is also in harmony with another provision of the Maine Constitution that refers to the direct initiative process, indicating that "the business of the second regular session of the Legislature" is limited to certain matters, including "legislation *presented to the Legislature by written petition of the electors* under the provisions of Article IV, Part Third, Section 18." Me. Const. art. IV, pt. 3, § 1 (emphasis added); *see* Laurence H. Tribe, *American Constitutional Law*, § 1-12 at 38 (3d ed. 2000) (stating that interpreting constitutional text "requires close attention to linguistic *context*—that is, to surrounding language; to how the relevant word or phrase is used elsewhere in the document"); *Avangrid Networks, Inc.*, 2020

20

ME 109, ¶ 27, 237 A.3d 882 (examining constitutional language in the context of the Maine Constitution as a whole). Again, the *electors*[4] are referenced as the entities who "present" a proposed measure to the Legislature, which supports an interpretation of section 18 to provide for the electors' presentation of their proposal to the Legislature through the Secretary of State.[5]

[¶23] Finally, because the Maine Constitution contemplates the electors' presentation of the proposals to the Legislature during a regular session, *see* Me. Const. art. IV, pt. 3, § 18(1), section 18(2) should not be interpreted to allow a delay in the constitutional act of "presentation" when legislative staff does not promptly prepare the transmitted measures for consideration by the Legislature. *Cf.* Joint Rule 210 (131st Me. Legis. 2023) ("All bills and other instruments, including bills proposed by initiative, must be allocated to the Maine Revised Statutes as appropriate and corrected for form, legislative style and grammar by the Revisor of Statutes before printing.").

[¶24] We consider the initiated measures to have been "presented" when the Secretary of State transmitted them to the Legislature. Me. Const. art. IV, pt.

---

[4] *See* Me. Const. art. II, § 1 (establishing the scope of the term "electors").

[5] For this reason, the proclamation of the Governor here was properly made "subsequently to the recess of the session of the Legislature to which such measure was proposed." *Opinion of the Justices*, 275 A.2d 800, 804 (Me. 1971); *see* Me. Const. art. IV, pt. 3, § 18(3).

3, § 18(2).  Thus, our answer to the first question is *yes*.  We therefore proceed to the remaining questions.

## 2. Questions 2 through 5—Scope of the Legislature's Authority to Act on the Measures in the First Special Session

Question 2.  If the answer to Question 1 is in the affirmative, did the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2 preclude the 131st Legislature, as assembled in the First Regular Session, from carrying the measure over for consideration in the First Special Session?

Question 3.  If the answer to Question 2 is in the negative, does the Legislature's Constitutional power enumerated in Article IV, Part Third, Section 1 to "make and establish all reasonable laws and regulations for the defense and benefit of the people of this State" include the power to consider and enact the measure into law during the First Special Session?

Question 4.  If the answer to Question 3 is in the affirmative and a measure is thus enacted by the First Special Session of the Legislature without change, must the identical measure identified in a Proclamation executed by the Governor on April 7, 2023 "not go to a referendum vote" pursuant to the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2?

Question 5.  If the answer to Question 4 is in the negative, is a bill thus enacted by the First Special Session of the Legislature a competing measure to an identical measure placed on the ballot by proclamation of the Governor on April 7, 2023, as described in the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2?

[¶25]  We consider the remaining four questions together because they are analytically related.  Here, the Legislature did not act on the proposed

measures during the session in which the measures were presented but rather adjourned before its staff and the Office of the Revisor of Statutes had produced and delivered legislative documents for the Legislature's consideration. The Legislature passed a joint order, however, to carry all pending matters over to the next session.

[¶26]  For purposes of determining the scope of the Legislature's authority to act on the initiatives in the First Special Session, we begin by considering the opinion of the Justices who reasoned, in 1996, that the Legislature was free to consider competing measures during a special session. *Opinion of the Justices*, 680 A.2d 444, 446 (Me. 1996). There, the Justices opined that the Constitution "does not appear to restrict the Legislature's ability to craft a competing measure to the same session" but instead "directs the Legislature to submit the competing measure to the electors in time for the people to choose between the competing measures or reject both." *Id.* Those Justices construed the Constitution to enable the Legislature "to enact a competing measure at a subsequent Special Session within the same biennial session of that Legislature," and opined that their construction was "supported by the broad language vesting all legislative power in the Legislature's two

Houses in Article IV, Part First, § 1, subject only to the people's reserved powers."[6] *Id.*

[¶27]   There is a distinction in the constitutional text between the Legislature offering a competing measure and the Legislature enacting a proposed measure without change.  Section 18(2) provides, "The measure thus proposed, unless enacted without change by the Legislature at the session at which it is presented, *shall* be submitted to the electors together with any amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both."  Me. Const. art. IV, pt. 3, § 18(2) (emphasis added).  There is no limitation, however, on when any "amended form, substitute, or recommendation of the Legislature" may be produced.  *Id.*

[¶28]   Section 18(2) subsequently provides that "[i]f the measure initiated is enacted by the Legislature without change, it *shall not* go to a referendum vote" except upon the electors' petition for a people's veto of legislation.  Me. Const. art. IV, pt. 3, § 18(2) (emphasis added); *see* Me. Const.

---

[6]   The Law Court has also held that the Legislature may enact emergency legislation that would otherwise constitute a competing measure before the election.  *McCaffrey v. Gartley*, 377 A.2d 1367, 1371 (Me. 1977).

art. IV, pt. 3, § 17.  That provision does not indicate when the enactment by the Legislature without change must occur.  *See id.* art. IV, pt. 3, § 18(2).

[¶29]  As mentioned above, we construe the constitutional text as a unified whole.  *See* Tribe, *American Constitutional Law*, § 1-12 at 38; *Avangrid Networks, Inc.*, 2020 ME 109, ¶ 27, 237 A.3d 882.  In doing so, we also consider the implementing statutes pertaining to the direct initiative of legislation.  *See Winchester*, 2023 ME 23, ¶ 14, 291 A.3d 707; *Martin*, 2021 ME 62, ¶ 24, 264 A.3d 1224.

[¶30]  The relevant constitutional text provides that a petition must be filed with the Secretary of State "by the hour of 5:00 p.m., on or before the 50th day after the date of convening of the Legislature in first regular session," and "not . . . later than 18 months after the date the petition form was furnished or approved by the Secretary of State."  Me. Const. art. IV, pt. 3, § 18(1).  After receiving the filing, the Secretary of State "determine[s] the validity of the petition and issue[s] a written decision stating the reasons for the decision within 30 days from the date of filing."  21-A M.R.S. § 905(1).  It is at that point transmitted and thereby "presented" to the Legislature.  Me. Const. art. IV, pt. 3, § 18(2); *see also* 21-A M.R.S. § 907.  After the Secretary of State issues the decision, however, it may be challenged by a qualified voter.  Me. Const. art. IV,

pt. 3, § 22; 21-A M.R.S. § 905(2)-(4).  If challenged, the decision is subject to a constitutionally mandated judicial review process that can take up to "100 days from the date of filing of [the] written petition in the office of the Secretary of State."  Me. Const. art. IV, pt. 3, § 22; *see* 21-A M.R.S. § 905(2)-(4).

[¶31]  The Legislature may, under this constitutional and statutory framework, be presented with a proposed initiative that has not yet been conclusively determined to be valid.  In these circumstances, some delays might arise in the Legislature's consideration of a proposed initiative and result in the measures not being fully considered before the end of a regular session.  The possibility that legislative proceedings on an initiative may be delayed is especially profound because the Legislature must, by statute, hold a public hearing on the proposed legislation unless it waives the hearing by a two-thirds vote.  *See* 21-A M.R.S. § 907.  Thus, we opine that a Legislature that does not enact a measure without change during a regular session can still—during a special session—enact any of the proposed measures without change.[7]

[¶32]  If the Legislature enacts a measure without change, the measure will not be submitted to the electorate absent a petition for a people's veto*. See*

---

[7]  If it is an identical measure, it cannot be a competing measure because a competing measure deals "with the same general subject matter . . . in a manner inconsistent with the initiated measure so that the two cannot stand together."  *Farris ex rel. Dorsky v. Goss*, 143 Me. 227, 232, 60 A.2d 908 (1948).

Me. Const. art. IV, pt. 3, § 18(2); Tinkle, *The Maine Constitution* 103 (2d ed. 2013). To hold otherwise would thwart the constitutional power of the Legislature to adopt an initiative without change. *See* Me. Const. art. IV, pt. 3, § 18(2); *see also* Me. Const. art. IV, pt. 3, § 1 ("The Legislature, with the exceptions hereinafter stated, shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to this Constitution, nor to that of the United States."); *Sawyer v. Gilmore*, 109 Me. 169, 180, 83 A. 673 (1912) ("The powers of the Legislature in matters of legislation, broadly speaking are absolute, except as restricted and limited by the Constitution."). More importantly, it would also thwart the constitutionally conferred opportunity of the electors to "propose *to the Legislature for its consideration* any bill, resolve or resolution" through the direct initiative process. Me. Const. art. IV, pt. 3, § 18(1) (emphasis added); *see McGee*, 2006 ME 50, ¶ 25, 896 A.2d 933. This interpretation also accords with common sense: it would be strange, indeed, if the Legislature could enact a similar measure to become a competing measure and yet be divested of the power to enact the very measure the electors proposed.

[¶33] Thus, we interpret the Maine Constitution to allow the Legislature to adopt any of the proposed measures without change. *See* Me. Const. art. IV,

pt. 3, § 18(2).  If the Legislature does adopt a measure, it should be mindful of the need to do so in a timely fashion to prevent ballots from including questions that are not properly submitted to the electors for a vote.  *Cf. Opinion of the Justices*, 680 A.2d at 446 (interpreting section 18(2) to "direct[] the Legislature to submit the competing measure to the electors in time for the people to choose between the competing measures or reject both").

[¶34]  Thus, our response to Question 2 is *no*, our response to Question 3 is *yes*, and our answer to Question 4 is *yes*.  We do not answer Question 5.

## III.  CONCLUSION

[¶35]  In the context of the questions presented and for the reasons stated above, we answer the questions as follows:

> Question 1.  Is the mere transmittal of a measure by the Secretary of State sufficient to constitute "present[ation] to the Legislature" within the meaning of the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2, notwithstanding that at the time it was transmitted the measure did not exist as a legislative document, had not been printed pursuant to Joint Rule 401, had not appeared on any legislative calendar, and that neither the full House nor full Senate were made aware that the measure was in possession of the Legislature until approximately 53 days after transmittal?

Answer:     Yes.

> Question 2.  If the answer to Question 1 is in the affirmative, did the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2 preclude the 131st Legislature, as assembled in the

First Regular Session, from carrying the measure over for consideration in the First Special Session?

Answer:    No.

Question 3.  If the answer to Question 2 is in the negative, does the Legislature's Constitutional power enumerated in Article IV, Part Third, Section 1 to "make and establish all reasonable laws and regulations for the defense and benefit of the people of this State" include the power to consider and enact the measure into law during the First Special Session?

Answer:    Yes.

Question 4.  If the answer to Question 3 is in the affirmative and a measure is thus enacted by the First Special Session of the Legislature without change, must the identical measure identified in a Proclamation executed by the Governor on April 7, 2023 "not go to a referendum vote" pursuant to the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2?

Answer:    Yes.

Question 5.  If the answer to Question 4 is in the negative, is a bill thus enacted by the First Special Session of the Legislature a competing measure to an identical measure placed on the ballot by proclamation of the Governor on April 7, 2023, as described in the Constitution of Maine, Article IV, Part Third, Section 18, Subsection 2?

We do not answer this Question.

Dated:  June 9, 2023

<div style="margin-left: 50%;">

_____/s/_____
Valerie Stanfill
Chief Justice

_____/s/_____
Andrew M. Mead

_____/s/_____
Joseph M. Jabar

_____/s/_____
Andrew M. Horton

_____/s/_____
Wayne R. Douglas

Associate Justices

</div>

Melissa A. Hewey, Esq., David M. Kallin, Esq. (orally), and Oliver Mac Walton, Esq., Drummond Woodsum & MacMahon, Portland, for the Maine State Legislature

Aaron M. Frey, Attorney General, and Jonathan R. Bolton, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for the Attorney General

Paul E. Suitter, Asst. Atty. Gen., Office of the Attorney General, Augusta, for the Secretary of State

Gerald D. Reid, Esq., and Timothy J. Feeley, Esq., Office of the Governor, Augusta, for the Governor

Benjamin Gaines, Esq. (orally), Gaines Law, LLC, Portland, for Protect Maine Elections, Inc.

Nolan L. Reichl, Esq., Julia B. MacDonald, Esq., and Joshua D. Dunlap, Esq. (orally), Pierce Atwood LLP, Portland, for Maine Affordable Energy Ballot Question Committee